DAYLE K. RUST, Appellant, *v.* CLARK COUNTY SCHOOL DISTRICT, a Governmental Agency of Clark County; BOARD OF TRUSTEES OF CLARK COUNTY SCHOOL DISTRICT; VIRGINIA BROOKS BREWSTER; HELEN C. CANNON; DONALD R. FAIS; ROBERT FORBUSS; JAMES H. LYMAN; THOMAS SEMMENS and JANET SOBEL, in Their Capacity as School Board Trustees; CLAUDE G. PERKINS, in His Capacity as Superintendent of the Clark County Schools, Respondents.

No. 14541

June 27, 1984                                        683 P.2d 23

*Jones, Jones, Bell, Close and Brown,* and *Will Kemp,* Las Vegas, for Appellant.

*Thomas J. Moore,* Las Vegas, for Respondents.

## OPINION

By the Court, Mowbray, J.:

Appellant Dayle K. Rust (Rust) was an employee of the Clark County School District for over twenty years. For seventeen of those years he served as assistant principal, or principal, of elementary schools in the district, the last three years as principal of Vegas Verde Elementary School. In the fall of 1979,

Rust took a long-planned leave of absence of ten school days in order to meet his son, who was completing a religious mission in Europe. Because his request for such leave was denied, on the basis of a recently-enacted district policy severely curtailing school administrators' ability to use previously accumulated leave days, Rust was suspended from his duties on his return, and ultimately dismissed from the employ of the Clark County School District, on the ground of "insubordination." Because we find that under the particular circumstances presented by this case the action of the respondent Clark County School District Board of Trustees in dismissing appellant after twenty years of service was arbitrary and capricious, we reverse the judgment of the district court affirming the decision of the board.

In the fall of 1977, appellant's son left on a two year mission abroad, under the auspices of a church of which Rust is also a member. At that time Rust made a commitment to his son that at the conclusion of his mission, Rust would join him in Europe and accompany him home. Rust's plans were predicated upon a long-standing district policy which allowed liberal use of earned leave days.

Rust proceeded to make preparations to effectuate his plans, including arranging with his church to meet its requirements by becoming a missionary himself for the period of the trip, and purchasing the required tickets. Rust made no secret of his plans, and indeed discussed them with the Associate Superintendent for Personnel some eight months before his departure. He spent evenings and weekends making the necessary preparations so that the school would run smoothly during his absence.

Unfortunately for Rust, sixteen days before his planned departure on October 3, 1979, the district, following inconclusive collective bargaining on the issue with district administrators, unilaterally changed its leave policy by limiting administrators' use of earned leave to no more than five school days per year, or two days in succession, except in cases of "emergency." Rust then had accumulated over forty days of leave, of which he sought to use ten days in succession. Rust's request for leave was denied by his supervising administrator on September 25, as was his request for reconsideration. Rust indicated that he nevertheless intended to fulfill his commitment by completing the trip as planned, and preparations were made for administration of the school in his absence. On October 1, the district presented Rust with a formal admonishment repeating the denial of the request for leave and specifying that "defiance of this directive may result in your immediate demotion, dismissal or nonrenewal of contract," on the ground of

insubordination, or failure to comply with reasonable board requirements, citing NRS 391.312(1)(d) and (k).[1]

On October 3, Rust left for Europe as planned. When he returned to school on October 18, he was presented with a Notice of Suspension, announcing the district's decision to suspend Rust immediately from his position as principal of Vegas Verdes Elementary School and as an administrator with the Clark County School District, "in the best interests of the children of the district." The Notice further announced the intent of the district to initiate dismissal proceedings.

Such proceedings were subsequently undertaken, and the respondent Board of Trustees on July 10, 1980, upon recommendation of a hearing officer, issued its decision dismissing Rust from its employ. The district court affirmed.

On appeal, Rust raises a number of procedural statutory and constitutional issues, many of which we find without merit. However, we do agree that under the circumstances presented, appellant's conduct did not warrant the drastic remedy of dismissal.

This Court has long taken seriously its duty to review the evidence before the findings of administrative boards on cases involving dismissal of public employees to determine whether legal cause for removal has been shown. *See, e.g.,* Richardson v. Bd. Regents, 70 Nev. 347, 351-352, 269 P.2d 265, 268 (1954), *citing* Ex rel. Whalen v. Welliver, 60 Nev. 154, 104 P.2d 188 (1940); Paulson v. Civil Service Commission, 90 Nev. 41, 518 P.2d 148 (1974); Lapinski v. City of Reno, 95 Nev. 898, 603 P.2d 1088 (1979). As we have consistently reiterated, legal cause is "not any cause which the officer authorized to make such removal may deem sufficient." Rather, such cause "must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold the office." Ex rel. Whalen

---

[1]NRS 391.312 provides in pertinent part:

(1) [A]n administrator may be demoted, suspended, dismissed or not reemployed for the following reasons:

. . . .

(d) Insubordination;

. . . .

(k) Failure to comply with such reasonable requirements as a board may prescribe;

. . . .

v. Welliver, 60 Nev. at 158, 104 P.2d at 190-191, *quoting* Sausbier v. Wheeler, 299 N.Y.S. 466, 472 (App.Div. 1937).

In this case, the district has predicated its action upon a charge of "insubordination." We have defined this term as "a willful disregard of express or implied directions, or such a defiant attitude as to be equivalent thereto. 'Rebellious,' 'mutinous,' and 'disobedient' are often quoted as definitions or synonyms of 'insubordinate.' " Richardson v. Bd. Regents, *supra,* 70 Nev. at 367, 269 P.2d at 276. We suggested that the authority of the superior to promulgate the order, or the "reasonableness of the order in question" might also be considered in an appropriate case. *Id.*

"Insubordination" has elsewhere been defined as " 'constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority.' " Board of Trustees v. Holso, 584 P.2d 1009, 1015 (Wyo. 1978), *quoting* Ray v. Minneapolis Board of Education, Special School District No. 1, 202 N.W.2d 375, 378 (Minn. 1972). The Wyoming court also noted that "[t]he better-reasoned decisions place emphasis on the presence of a persistent course of willful defiance." 584 P.2d at 1016. Thus, a number of courts have refused to find cause supporting dismissal in a single instance of being absent without prior permission of school authorities. *See, e.g.,* Midway School Dist. of Kern County v. Griffeath, 172 P.2d 857 (Cal. 1946); Oakdale Union School District v. Seamen, 104 Cal.Rptr. 64 (Cal.App. 1972); Tucker v. Bd. of Ed. of Town of Norfolk, 418 A.2d 933 (Conn. 1979); Beverlin v. Board of Ed. of Lewis County, 216 S.E.2d 554 (W.Va. 1975).

In *Beverlin* the court found that dismissal for an unauthorized absence, on the ground of insubordination, was arbitrary and capricious. 216 S.E.2d at 559. The court stressed that the pupils did not suffer in his absence, and that the reason for his absence was laudable. Here, the district does not claim that the students or the school were detrimentally affected by Rust's absence, for which he apparently made dutiful advance preparation. Further, the reason for his absence, while personal, is deserving at least of consideration and respect. As the court said of Beverlin, his "unexcused absence best might be described as an error of judgment, resulting in no harm to his employers." *Id.* at 558.

It appearing that the penalty is excessive, we reverse the judgment of the district court and remand the case with instruction to return the matter to the school district Board of

Trustees for imposition of a penalty consistent with the views expressed in this opinion.

MANOUKIAN, C. J., and SPRINGER, and GUNDERSON, JJ., and GRIFFIN, D. J.[2], concur.